```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| VICTAULIC COMPANY | : | CIVIL ACTION |
| v. | : | |
| JOSEPH L. TIEMAN, et al. | : | NO. 06-5601 |

| | | |
|---|---|---|
| JOSEPH L TIEMAN, et al. | : | CIVIL ACTION |
| v. | : | |
| VICTAULIC COMPANY | : | NO. 07-512 |

ORDER

AND NOW, this 29th day of March, 2007, upon consideration of Joseph L. Tieman and Tyco Fire Products LP's motion to dismiss[1] (docket entry # 11 in C.A. No. 06-5601) and motion to dismiss counterclaims (docket entry # 14 in C.A. No. 07-512), Victaulic Company's responses to these motions, and the Court finding that:

(a) Victaulic develops and manufactures valves, couplings, sprinkler heads and other mechanical devices for

---

[1] The Court may grant a motion to dismiss under Rule 12(b)(6) "only if, accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). In other words, we will not grant such a motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000) (permitting dismissal "only if it appears that the [plaintiffs] could prove no set of facts that would entitle [them] to relief"). "The complaint will be deemed to have alleged sufficient facts if it adequately put the defendants on notice of the essential elements of the plaintiffs' cause of action." Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996).

various applications, including fire protection systems, and sells its products throughout the United States, Victaulic Compl. & Counterclaim ¶¶ 6-7;

(b) Tyco is a subsidiary or affiliate of Tyco International, Ltd. that competes directly with Victaulic, id. at ¶ 8;[2]

(c) Victaulic hired Tieman as a full-time sales representative in April of 1998, id. at ¶ 9;

(d) According to Victaulic, Tieman's service area "primarily included" Ohio, West Virginia, and the western part of Pennsylvania, but "he also had relationships with Victaulic customers throughout the United States," Victaulic Compl. ¶ 13; see also Counterclaim ¶ 13 (sales region "extended nationwide");

(e) On October 22, 2005, Tieman signed a Non-Disclosure, Invention Assignment and Non-Competition Agreement

---

[2] On March 17, 2005, as part of another lawsuit involving a former Victaulic employee's alleged breach of a non-compete agreement, Tyco confirmed to Victaulic that it did not, as a matter of policy and practice, knowingly induce any Victaulic employee to breach any enforceable agreement. Victaulic Compl. & Counterclaim ¶ 24. It further confirmed that it did not knowingly employ any current or former Victaulic employee in any manner that would cause the employee to violate any enforceable non-solicitation, non-competition, non-disclosure and confidentiality agreement, and it also stated that it asked prospective employees about such agreements. Id.

(the "Agreement"),[3] for which Victaulic[4] gave him adequate consideration, Victaulic Compl. & Counterclaim at ¶ 10;

  (f) The Agreement states, in relevant part:

> 4)  In order to protect the Company's legitimate interests, including its confidential/trade secret information, customer relationships and the goodwill acquired through my efforts while employed by the Company, I agree that I will not:
>
> a)  During the time of my employment with the Company become an employee, consultant or independent contractor of any business in competition with the Company.  For purposes of this entire paragraph 4 including all subsections, a business will be deemed to be in competition with the Company if it sells or distributes the types of items or products regularly sold, offered for sale, or contemplated for sale by the Company.
>
> b)  I further agree that for twelve (12) months following the date of termination of my employment with the Company (regardless of the reason for the termination and regardless of whether the termination is voluntary or involuntary on my part), I will not, within any Restricted Victaulic Sales Region, engage either directly or indirectly in the sale or distribution of the type of items or products regularly sold, offered for sale, or contemplated for sale by the Company as an employee, consultant or independent contractor of any business in competition with the Company.  For purposes of this paragraph, a Restricted Victaulic Sales Region shall mean any sales region in which I had or shared a sales territory or any sales region in which I had responsibility or significant involvement during the three year

---

[3] The Agreement, by its terms, is construed and enforced in accordance with Pennsylvania laws.  Agreement ¶ 7.

[4] Victaulic is identified as "Victaulic Company of America or any of its predecessors, successors, assigns, affiliates, or subsidiary companies (collectively referred to as 'the Company')."  Agreement, Introductory Paragraph.

>period prior to my termination of my employment.
>
>c)  I further agree that for twelve (12) months following the date of termination of my employment with the Company (regardless of the reason for the termination and regardless of whether the termination is voluntary or involuntary on my part), I will not, within any geographic region in which Victaulic products are sold (which includes all of the continental United States, Canada & Mexico), engage either directly or indirectly in the sale or distribution of the type of items or products regularly sold, offered for sale, or contemplated for sale by the Company as an employee, consultant or independent contractor for or on behalf of any of the following businesses:  Tyco International Ltd.; Star Pipe Products; Anvil International Inc.; Shurjoint Piping Products Inc.; Modgal Metal Ltd.; Viking Corporation & Viking SA; Mueller Industries, Inc.; Viega International; The Reliable Automatic Sprinkler Co., Inc.; and any and all of their subsidiaries, affiliates, or successors.
>
>d)  I further agree that for twelve (12) months following the date of termination of my employment with the Company (regardless of the reason for the termination and regardless of whether the termination is voluntary or involuntary on my part), contact or solicit any past or present Company customers on behalf of any business in competition with the Company.

Agreement ¶ 4(a)-(d);

  (g)  On December 11, 2006, Tieman resigned from his job with Victaulic and immediately began working for Tyco as a sales representative, selling products similar to those he had sold for Victaulic, Victaulic Compl. & Counterclaim ¶¶ 21-22;

  (h)  Tieman alleges that his sales territories for Victaulic and Tyco do not overlap because his Victaulic territory was Ohio, West Virginia, and the western portion of Pennsylvania,

Tieman & Tyco Compl. ¶ 7, whereas his Tyco region covers Indiana, Wisconsin, Illinois, Minnesota, Iowa, North Dakota, South Dakota, and Kentucky, id. at ¶ 13;

(i)  Victaulic is suing Tieman and Tyco (C.A. No. 06-5601), and Tyco and Tieman also filed a lawsuit against Victaulic in the Southern District of Ohio, which the court there transferred to our district (assigned C.A. No. 07-512 here);

(j)  At issue are the identical claims and counterclaims Victaulic raised in both actions: (1) breach of employment agreement against Tieman for violating a non-competition provision; (2) breach of employment agreement against Tieman for violating a non-solicitation provision; (3) violation of Pennsylvania's Uniform Trade Secrets Act, 12 Pa.C.S. § 5303, against Tieman and Tyco; (4) tortious inference with contractual relations against Tyco; and (5) unfair competition against Tyco;

(k)  Tieman and Tyco move to dismiss Counts I, II, IV, and V, contending that paragraphs 4(c) and 4(d) of the Agreement (the "non-compete provisions") upon which Victaulic bases these four claims are overly broad and thus unenforceable as a matter of Pennsylvania law;

(l)  Victaulic asserts that the Agreement's restrictions were reasonably necessary to protect the company's interests in customer goodwill, trade secrets, and specialized training and skills Tieman acquired in eight years at Victaulic;

(m)  Pennsylvania courts "permit the equitable enforcement of post-employment restraints only where they are [1]

incident to an employment relation between the parties to the covenant, [2] the restrictions are reasonably necessary for the protection of the employer, and [3] the restrictions are reasonably limited in duration and geographic extent," Sidco Paper Co. v. Aaron, 351 A.2d 250, 252 (Pa. 1976);[5]

(n)   Non-competition agreements can protect legitimate business interests including "trade secrets of an employer, customer goodwill[6] and specialized training and skills acquired from the employer," Thermo-Guard, Inc. v. Cochran, 596 A.2d 188, 193-94 (Pa. Super. Ct. 1991) (footnote added);

(o)   Pennsylvania jurisprudence does not favor restrictive covenants and has historically viewed them as a trade restraint preventing a former employee from earning a living, Hess v. Gebhard & Co. Inc., 808 A.2d 912, 917 (Pa. 2002);

(p)   Tieman and Tyco contend that the non-compete provisions are unlawfully broad in three respects[7];

---

[5] The first element is not at issue here.

[6] The Pennsylvania Supreme Court has defined goodwill "as that which represents a preexisting relationship arising from a continuous course of business . . . . [and] the positive reputation that a particular business enjoys." Hess v. Gebhard & Co. Inc., 808 A.2d 912, 922 (Pa. 2002) (internal quotations and citations omitted).

[7] They rely on Boldt Machinery & Tools, Inc. v. Wallace, 366 A.2d 902 (Pa. 1976) (per curiam). There, a sharply divided Pennsylvania Supreme Court held that:

> An employer's interest in the customer
> relationships developed by an employee whose
> contact with customers occurred at the
> customer's premises extends no farther than
> the sales territory to which the employee was

(continued...)

(q) First, Tieman and Tyco contend that paragraph 4(c) is geographically overbroad because it prevents Tieman from working for Tyco in a similar capacity anywhere in the United States, Canada, and Mexico, even though his sales territory for Victaulic covered only Ohio, West Virginia, and the western part of Pennsylvania;

(r) Before proceeding, we note that the Agreement proscribes certain activities "within any geographic region in which Victaulic products are sold (which includes all of the continental United States, Canada & Mexico)," Agreement ¶ 4(c) (emphasis added), and since Victaulic undisputedly sells its products "worldwide" and "has facilities throughout the United States, Canada, Asia, and Europe," see Victaulic Br. in Opp'n to Pl.'s Mot. to Dismiss Counterclaims 10 ("Victaulic Br."),[8]

---

[7] (...continued)
assigned. . . .  Thus, a restrictive covenant designed to protect this interest is valid only insofar as it is limited to that area. If a covenant which is limited in area is still too widespread, the court should enforce the restraint, but only to the extent of the employee's sales territory.

Id. at 908 (internal citations omitted); accord Coventry First, LLC v. Ingrassia, No. 05-2802, 2005 WL 1625042, at *9 (E.D. Pa. July 11, 2005) (finding non-compete clause including all of the United States, Puerto Rico, and Canada was overbroad where employee's territory had covered five states).  We note that Boldt is not entitled to the authoritative weight typically accorded to a decision of the Pennsylvania Supreme Court because it is a per curiam decision of a divided panel.  See Hess v. Gebhard & Co. Inc., 808 A.2d 912, 922 (Pa. 2002); see also Commonwealth v. Tilghman, 673 A.2d 898, 903-05 (Pa. 1996).

[8] While Victaulic's brief makes representations about the company's global reach, its pleadings do not.  However,
(continued...)

paragraph 4(c)'s "geographic region[s]" includes, at minimum, all of North America and parts of Asia and Europe;

(s)  Victaulic contends that this provision is not geographically overbroad because Tieman's activities as an employee extended nationwide, so the restriction's geographic reach is reasonably necessary to protect the company's interests;

(t)  As already noted, Victaulic alleges that Tieman's service area "primarily included" Ohio, West Virginia, and the western part of Pennsylvania, but his customer relationships extended across the United States;

(u)  Victaulic also alleges that Tieman was familiar with sales and customers outside of his primary sales region because he trained sales representatives in various states, see Victaulic Compl. & Counterclaim ¶ 16;[9]

(v)  Victaulic's brief further asserts that "Tieman had projects, accounts and customer contacts in three countries: the United States, Mexico, and Canada," Victaulic Br. in Resp. to

---

[8] (...continued)
Victaulic's Web site verifies that it is a global business with facilities in North America, Asia, Europe, and the Middle East. See http://www.victaulic.com/content/whereisvic.htm (last visited Mar. 27, 2007).  We take judicial notice of this information as a matter of public record that is capable of accurate and ready determination by a source whose accuracy cannot reasonably be questioned.  See Fed. R. Evid. 201(b).

[9] Victaulic makes other specific representations about the scope of Tieman's activities based on an affidavit of its Vice President of Sales and Market Development.  Since the affidavit is outside the scope of the pleadings and public record, we shall not consider it on these motions to dismiss.

Defs.' Mot. to Dismiss 3, but the pleadings only allege national -- not international -- activities and contacts;

(w) Courts will, on occasion, uphold nationwide restrictive covenants that are ancillary to employment agreements, typically where former employees engaged in nationwide employment activities,[10] failed to challenge the restriction's geographic scope,[11] or were high-level employees,[12]

---

[10] See, e.g., Nat'l Bus. Servs., Inc. v. Wright, 2 F. Supp. 2d 701, 708 (E.D. Pa. 1998) ("Although nationwide covenants are disfavored, in this case both ASI and Impact are nationwide businesses, and Wright, while employed by ASI, had extensive contacts with customers all over the nation"); Nextgen Healthcare Info. Sys., Inc. v. Messier, No. 05-5230, 2005 WL 3021095, at *5, 13 (E.D. Pa. Nov. 10, 2005) (finding nationwide restriction on former Vice President and Ophthalmology Product Manager, who traveled around the country to promote his company's product, to be reasonable where plaintiff did nationwide business); cf. Fisher Bioservices, Inc. v. Bilcare, Inc., No. 06-567, 2006 WL 1517382, at *13 (E.D. Pa. May 31, 2006) (concluding undefined geographic scope was not unreasonable where plaintiff sought only to prevent former salesperson from soliciting business from the contacts she had made while working for plaintiff).

[11] See, e.g., Omicron Sys., Inc. v. Weiner, 860 A.2d 554, 560-61 (Pa. Super. Ct. 2004) (upholding global non-compete against executive where court did not address geographic scope and identified only issues as whether employer's non-compete had a legitimate purpose and whether employee's former and new employers were competitors); Overseas Strategic Consulting, Ltd. v. Larkins, No. 01-4115, 2001 WL 1198661, at *5 (E.D. Pa. Oct. 10, 2001) (finding scope of non-compete reasonable where former employee did not object to scope and it reached parts of central Europe -- where he had worked for plaintiff -- and western Asia).

[12] See, e.g., QVC v. Bozek, No. 96-1756, 1996 WL 179993, at *4 (E.D. Pa. Apr. 12, 1996) (finding nationwide noncompete signed by a Senior Vice-President of Programming and Broadcast Operations to be reasonable because QVC and its competitors conducted business through national broadcasts).

but we do not readily endorse multi-country restrictions against salespeople with limited territories[13];

(x)   Viewing Victaulic's allegations in the light most favorable to it (i.e., Tieman had material contacts across the United States, including in states he now services for Tyco, and some contacts in Mexico and Canada), we cannot at this early stage conclude that a nationwide restriction -- and perhaps one including parts of Mexico and Canada -- would necessarily be overbroad, though we find no support for a global restraint;[14]

(y)   Next, Tyco and Tieman contend that paragraph 4(c) restricts Tieman -- who worked for Victaulic only in the fire protection industry -- from working in all industries in which Victaulic sells products, which include building services,

---

[13] See, e.g., Fres-Co Sys. USA, Inc. v. Bodell, No. 05-3349, 2005 WL 3071755, at *5 (E.D. Pa. Nov. 15, 2005) (concluding non-compete form was overbroad where it reached three continents and employee's sales territory was only the southeastern United States and the Caribbean).

[14] Tieman and Tyco do not address paragraph 4(b)'s geographic restrictions, but we briefly note its effects. That provision would prevent Tieman from selling or distributing the types of products Victaulic "regularly sold, offered for sale, or contemplated for sale" within a "Restricted Victaulic Sales Region" (the "Region"). Agreement ¶ 4(b). Victaulic identifies Tieman's "Region" as Ohio, the western portion of Pennsylvania, West Virginia, Indiana, portions of Kentucky, North Dakota, South Dakota, portions of Illinois, Wisconsin, and Minnesota. See Victaulic Br. 3 & n.2. Thus, Victaulic clearly considers that a salesperson's restricted "Region" can consist of more than what his service area "primarily included," which in Tieman's case is Ohio, West Virginia, and the western part of Pennsylvania.

industrial, water and wastewater, mining, and oilfield industries[15];

(z) Victaulic does not squarely address this alleged overbreadth, instead asserting that the Agreement does not prevent Tieman from earning a livelihood in his chosen industry[16];

(aa) Notwithstanding Victaulic's argument, we decide whether the Agreement's restrictions are needlessly broad by examining its terms;

(bb) Paragraph 4(c) identifies nine Victaulic competitors (and their subsidiaries, affiliates, or successors), including Tyco International Ltd., for whom Tieman cannot sell or

---

[15] Victaulic's complaint identifies the company as a "leading developer and manufacturer of valves, couplings, sprinkler heads and other mechanical devices for various applications including fire protection systems." Victaulic Compl. ¶ 6 (emphasis added). While Victaulic's pleadings do not specify that it sells products in the five other industries Tieman and Tyco identify, its Web site does, and we take judicial notice of these industries. See http://www.victaulic.com/content/PipingSystemSolutions.htm (last visited Mar. 27, 2007).

[16] Victaulic points to Tieman's representation in the Agreement that "my experience and capabilities are such that I may obtain gainful employment without breaching the terms and conditions of this Section 4 of the Agreement and that my obligations hereunder (and the enforcement thereof by injunction or otherwise) will not prevent me from earning a livelihood." Agreement ¶ 4(f). Victaulic further contends that Tieman can work: (1) for Tyco in sales divisions for home security, anti-theft, personal safety, health care, public communications, and transportation management; (2) for other businesses in the fire protection industry that sell products Victaulic does not regularly manufacture or sell (e.g., steel pipe, threaded fittings, welded outlets, certain ball valves, hangers, back flow preventers, and pumps); (3) for contractors or installers of fire protection systems; (4) for any sprinkler design company; and (5) for any Victaulic distributor. See Victaulic Br. 13-14.

distribute "the type of items or products regularly sold, offered for sale, or contemplated for sale" by Victaulic[17];

(cc) Since the Agreement does not limit the "items or products" to the industry in which Tieman worked, it therefore includes "items and products" regularly sold or "contemplated for sale" in all the industries in which Victaulic operates worldwide;

(dd) Victaulic fails to explain, and we do not see, why it is reasonable to prohibit Tieman from working in industries unrelated to fire protection anywhere in the world or why he must know what Victaulic regularly "contemplate[s] for sale" in all of the industries in which it sells products globally;

(ee) To the extent that the non-compete imposes such restraints, it is broader than reasonably necessary to protect any legitimate interests of Victaulic;

(ff) Lastly, Tieman and Tyco point out that paragraph 4(d) prevents Tieman from "contact[ing] or solicit[ing] any past or present [Victaulic] customers," and they contend this is overly broad because it applies to such customers anywhere in the world, even those Tieman never serviced or knew while working for Victaulic;

(gg) Victaulic relies on Thermo-Guard, Inc. v. Cochran, 596 A.2d 188, 193-94 (Pa. Super. Ct. 1991) for the proposition that "Pennsylvania courts have upheld injunctions to prevent

---

[17] As already noted, there are no geographic boundaries on this restriction.

solicitation by a former employee of an employer's present and prospective customers," Victaulic Br. 11;

(hh) A closer look at Thermo-Guard is instructive, though not helpful to Victaulic;

(ii) There, the Superior Court approved the trial court's limited injunction "prohibiting appellees from contacting or developing any relationship with any of Thermo-Guard's present customers or prospective customers who became known to appellees through their employment with Thermo-Guard," 596 A.2d at 194 (emphasis added);

(jj) Unlike Thermo-Guard's injunction, Victaulic's Agreement does not merely seek to prohibit Tieman from contacting customers who became known to him while he worked at Victaulic, but rather it seeks to prevent him from contacting or soliciting any past or present Victaulic customers regardless of whether he ever serviced them as a Victaulic employee or even knew they existed while he worked for Victaulic;

(kk) Notably, the Agreement does not provide that Victaulic will give departing employees a list of all past and present Victaulic customers, so, by its terms, the Agreement simply holds departing employees responsible for knowing all past and present Victaulic customers;

(ll) In light of Victaulic's global business activities, its attempt to hold Tieman responsible for knowing all past and present customers anywhere is not merely broader than necessary to protect its interests, it is also absurd;

(mm) In sum, viewing the allegations in the light most favorable to Victaulic, its former salesman Tieman sold the company's fire protection industry products primarily in Ohio, West Virginia, and western Pennsylvania, but also had material contacts across the country and maybe even the North American continent, and Victaulic has protectable interests in customer goodwill, trade secrets, and Tieman's specialized training and skills;

(nn) Even so, we find that the non-compete provisions of the Agreement as written are far broader than what would be reasonably necessary to protect Victaulic's legitimate interests;

(oo) The multi-continent restrictions are not limited to Tieman's former sales region or even to his chosen industry of fire protection products, and the provisions also hold him accountable for knowing every past and present Victaulic customer on the planet, regardless of whether he serviced them or learned of them while working for Victaulic;

(pp) Such needlessly broad restrictions are manifestly unreasonable and, as such, cannot provide a basis for Victaulic's Counts I, II, IV, and V;

(qq) We shall therefore dismiss those counts;

(rr) Tieman and Tyco also seek dismissal of Count III's claim under Pennsylvania's Uniform Trade Secrets Act (the "Act"),

12 Pa.C.S.A. §§ 5301-5308, which became effective April 19, 2004;[18]

   (ss) The Act provides for injunctive relief when a trade secret has been or may be misappropriated:

> Actual or threatened misappropriation may be enjoined. Upon application to the court, an injunction shall be terminated when the trade secret has ceased to exist, but the injunction may be continued for an additional reasonable period of time in order to eliminate commercial advantage that otherwise would be derived from the misappropriation.

12 Pa.C.S.A. § 5303(a); see also 12 Pa.C.S.A. § 5302 (defining "trade secrets" and "misappropriation");

   (tt) Because Tieman is an Ohio resident and his new Tyco territory allegedly does not include any portion of Pennsylvania, Tieman and Tyco contend that any alleged disclosure by Tieman could not occur in Pennsylvania and point out that Victaulic did not even plead any disclosure there;

   (uu) In the absence of a Pennsylvania disclosure, Tieman and Tyco conclude that Victaulic cannot state a claim under the Act;

   (vv) Victaulic counters that the Act is not restricted to disclosures made within Pennsylvania;

---

[18] The Act displaces conflicting tort, restitutionary and other Pennsylvania law providing civil remedies for misappropriation of a trade secret, except for "(1) contractual remedies, whether or not based upon misappropriation of a trade secret; (2) other civil remedies that are not based upon misappropriation of a trade secret; or (3) criminal remedies, whether or not based upon misappropriation of a trade secret." 12 Pa.C.S.A. § 5308.

(ww) Accordingly, we must decide whether the Act reaches disclosures made outside of Pennsylvania;

(xx) None of the three cases cited by the parties squarely address this important question, and in fact all were decided before the Act became effective; and

(yy) Before ruling on the motions to dismiss with respect to Count III, we shall require the parties to submit further briefing on the interesting issue they have identified,

It is hereby ORDERED that:

1.   Tieman's and Tyco's motions to dismiss are GRANTED with respect to Counts I, II, IV, and V our decision is RESERVED as to Count III; and

2.   By April 5, 2007, the parties shall each SUBMIT a supplemental brief (not to exceed ten pages) that addresses whether the Pennsylvania Uniform Trade Secrets Act can be applied to disclosures made outside of Pennsylvania.[19]

BY THE COURT:

/s/ Stewart Dalzell, J.

---

[19] The parties must cite binding legal authority for any propositions they advance.  If such authority does not exist, they shall state that and then cite persuasive authority that supports their positions.